The STATE of Ohio, Appellee,

v.

SANDERS, Appellant.

[Cite as *State v. Sanders* (1998), 130 Ohio App.3d 92.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–971043 and C–971044.

Decided Sept. 25, 1998.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Susan Laker Tolbert,* Assistant Prosecuting Attorney, for appellee.

*H. Fred Hoefle,* for appellant.

---

*Per Curiam.*

Defendant-appellant, Charles Sanders, Jr., was indicted for two separate robberies occurring on December 19, 1996. On September 8, 1997, the trial court heard Sanders's consolidated cases after he waived his right to a jury trial. Sanders was found guilty of two counts of aggravated robbery, two counts of robbery, one count of receiving stolen property, and two firearm specifications accompanying the charges. He appeals the convictions.[1]

## I. RIGHT TO PUBLIC TRIAL

In Sanders's first assignment of error, he asserts that he was deprived of his constitutional right to a public trial when the trial court ejected all of the spectators from the courtroom as the trial neared its conclusion. This assignment of error is well taken.

Sanders's criminal trial lasted three days. On the first day, the trial court separated the witnesses. There is no evidence that the audience was loud or disruptive during the first day. On the second day of trial, the court admonished the audience on two separate occasions for talking and asked the audience to quiet down. On the final day, the trial court began the morning session by

---

1. This court consolidated the two appeals, Nos. C–971043 and C–971044, and removed them from the accelerated calendar on April 2, 1998.

stating that it had grave concerns about the spectators' conduct both inside and outside the courtroom. The trial court noted that there were disturbances in the hallway, and that an adverse atmosphere was developing in the courtroom. Additionally, the court revealed that the prosecutor was concerned that she would not be able to continue to perform her job without feeling intimidated or harassed by the spectators. The trial court entertained arguments from the prosecutor and defense counsel relating to this issue.

The prosecutor argued that the atmosphere in the courtroom was like a "circus," but she noted that most of the problems arose outside the courtroom in the hallway. The prosecutor averred that she had heard comments directed towards her during the breaks and that some intimidating actions were taken against the victims. She alleged that Sanders's family members' behavior towards the witnesses interrupted the trial. The prosecutor also complained of frequent running in and out of the courtroom by the spectators. Defense counsel strongly opposed the total expulsion of the spectators and asked for permission to allow Sanders's wife and parents into the courtroom. The trial court denied defense counsel's request and ordered everyone out of the courtroom for the duration of the trial. Once the members of the audience were expelled from the courtroom, the prosecution called two rebuttal witnesses and closing arguments were heard. At the conclusion of the trial, the trial court found Sanders guilty on all counts.

Sanders asserts that the trial court erred because the closure was not necessary and that, even if it was necessary, the exclusion was not narrowly tailored. Sanders avers that the exclusion of all spectators, including family and friends, was overbroad and not supported by the record. In addition, Sanders contends that the trial court accepted the prosecutor's proffer as true without considering the merits of her arguments. The state maintains that there is a constitutional right to a public trial, but argues that the trial court has the power to make reasonable exclusions of the public. We agree that the trial court may make reasonable exclusions of the public during trial, but we hold that the total exclusion of the public even towards the end of trial was not warranted in this case.

The right to a public trial is a fundamental constitutional guarantee under the Sixth Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, and Section 10, Article I of the Ohio Constitution.[2] The right to a public trial has historically been recognized as a safeguard against possible infringements by the court against the accused. An open courtroom is necessary to preserve and support the fair administration of

---

2. *State v. Lane* (1979), 60 Ohio St.2d 112, 119, 14 O.O.3d 342, 347, 397 N.E.2d 1338, 1343.

justice because it encourages witnesses to come forward and be heard by the public, discourages perjury by the witnesses, and ensures that the judge and prosecutor will carry out their duties properly.[3]  Also, a public trial benefits the accused in that " 'the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions.' "[4]  The right to a public trial is so important that a criminal defendant is not required to show specific prejudice to obtain relief from the constitutional violation.[5]

The right to a public trial is not an absolute right.[6]  A trial judge has the authority to exercise control over the proceedings.  A judge may exclude those members of the audience whose conduct is likely to interfere with the administration of justice or to denigrate the protection of public health, safety and morals.  However, an abridgment of a defendant's right to a public trial shall only occur when necessary,[7] and any abridgment must be applied sparingly.[8]

To close a trial proceeding, the court must consider various factors.[9] First, the trial court must determine that there is an overriding interest that is likely to be prejudiced if the courtroom is not closed.  Second, the trial court must determine whether there are reasonable alternatives available that will protect that interest yet preserve a defendant's constitutional right to a public trial.  Third, it must issue an order that is no broader than necessary to preserve the stated interest.  Finally, the court must make findings adequate to support the closure.

---

3.  *Waller v. Georgia* (1984), 467 U.S. 39, 46, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31, 38.  See, also, *State v. Lane*, 60 Ohio St.2d at 119, 14 O.O.3d at 347, 397 N.E.2d at 1343.

4.  *Waller, supra*, at 46, 104 S.Ct. at 2215, 81 L.Ed.2d at 38, quoting *In re Oliver* (1948), 333 U.S. 257, 270, 68 S.Ct. 499, 506, 92 L.Ed. 682, 693, fn. 25.

5.  *Id.* at 49, 104 S.Ct. at 2217, 81 L.Ed.2d at 40.

6.  *State v. Unger* (1986), 28 Ohio St.3d 418, 421, 28 OBR 472, 474–475, 504 N.E.2d 37, 40.

7.  *State v. Bayless* (1976), 48 Ohio St.2d 73, 109, 2 O.O.3d 249, 268–269, 357 N.E.2d 1035, 1057, vacated in part on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1155.

8.  *State v. Lane, supra*, 60 Ohio St.2d at 121, 14 O.O.3d at 348, 397 N.E.2d at 1344.

9.  *Waller v. Georgia*, 467 U.S. at 45, 104 S.Ct. at 2215, 81 L.Ed.2d at 37–38.  See, also, *Press–Ent. Co. v. Superior Court of California* (1984), 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629, 638–639.  Accord *State v. Unger, supra*, 28 Ohio St.3d at 421, 28 OBR at 474–475, 504 N.E.2d at 40.

The right to a public trial applies equally to pretrial and trial proceedings.[10] Therefore, the closure of the courtroom before or during any part of the trial proceeding, even when closing argument is all that remains, must be narrowly tailored to protect the asserted interest. After carefully reviewing the record here, we hold that it does not support the trial court's finding that there was an overriding interest likely to be prejudiced without total closure of the courtroom. There is little evidence that supports the claim that there was an adverse atmosphere in the courtroom. The only evidence in the record suggesting that the atmosphere in the courtroom was disruptive relates to the level of noise in the courtroom. There are two instances in the record where the court warned the spectators to discontinue talking, but it appears that the court was able to retain control over these disturbances by merely reprimanding the audience for its behavior. We can hardly conclude, based on these two disturbances alone, that there was an overriding interest to warrant total closure of the courtroom. Additionally, it appears that much of the noise may have actually been coming from outside the courtroom. This court knows of no case where a courtroom was cleared merely because of a disturbance beyond the courtroom.

Even if we assume that there was a necessary interest to protect, the trial court did not consider an alternative to total closure of the courtroom. There was no effort made by the trial court to ascertain the identity of the spectators responsible for the disturbances and to expel them from the courtroom. Moreover, the trial court refused to adopt defense counsel's proposal requesting the admission of, at least, Sanders's wife and parents into the courtroom.

We further hold that the closure order was broader than necessary to maintain order in the courtroom. The closure of the courtroom was total. All spectators were expelled from the courtroom, including Sanders's wife and parents, despite the dearth of evidence relating to their involvement in the disturbances. Historically, "all courts have held that an accused is at the very least entitled to have his friends, relatives and counsel present, no matter with what offense he may be charged."[11] Some courts have held that the exclusion of a criminal defendant's family and friends violates the defendant's constitutional guarantee to a public trial.[12] Thus, absent more evidence supporting the total expulsion of Sanders's family and friends from the courtroom, we are convinced that the trial court's closure order was overly broad.

---

**10.** *State v. Unger, supra,* at 421, 28 OBR at 474–475, 504 N.E.2d at 40.

**11.** *In re Oliver,* 333 U.S. at 271–72, 68 S.Ct. at 507, 92 L.Ed. at 693.

**12.** See, *e.g., Guzman v. Scully* (C.A.2, 1996), 80 F.3d 772, 775; *Watters v. State* (1992), 328 Md. 38, 48–49, 612 A.2d 1288, 1293.

Finally, we determine that the trial court's conclusory justification for excluding all spectators does not provide us with a sufficient rationale for total closure of the courtroom. The trial court made no findings that the victims were intimidated or that the exclusion of the spectators would allay that fear. It is unclear from the record whether the closure of the courtroom was designed to prevent disruptive noise arising from inside or outside the courtroom. In light of the above determinations, we conclude that the trial court denied Sanders his constitutional right to a public trial under both the United States and the Ohio Constitutions by excluding all spectators from the courtroom during the course of the trial.

It is well established that Sanders is not required to establish prejudice as a prerequisite for relief upon a showing that he was denied his constitutional right to a public trial.[13] Because the deprivation of the constitutional right to a public trial cannot be a harmless error, Sanders's first assignment of error is sustained.

## II. IDENTIFICATION TESTIMONY

Sanders's third assignment of error alleges that the trial court erred in overruling his motion to suppress identification evidence, in violation of his right to due process of law under the Fourteenth Amendment to the United States Constitution, and Section 16, Article I, of the Ohio Constitution. The assignment is not well taken.

Before identification testimony may be suppressed, the trial court must find that the procedure employed was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification.[14] "[R]eliability is the linchpin in determining the admissibility of the identification testimony."[15] Factors to be considered in assessing the reliability of an identification include the opportunity of the witness to view the suspect, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.[16] Even if the identification

---

13. *Waller v. Georgia, supra,* 467 U.S. at 49–50, 104 S.Ct. at 2217, 81 L.Ed.2d at 40–41, and fn. 9. Accord *Arizona v. Fulminante* (1991), 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (holding that a critical trial error, such as the admission of an involuntary confession, is subject to harmless-error analysis, but stating that the denial of defendant's constitutional right to a public trial cannot be harmless error).

14. *Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401.

15. *Manson v. Brathwaite* (1977), 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140.

16. *Neil v. Biggers,* supra, 409 U.S. at 199, 93 S.Ct. at 382, 34 L.Ed.2d at 411.

procedure itself is suggestive, the challenged identification is admissible so long as it is reliable.[17]

Sanders challenges a photo-array identification made by one of the two victims, Daniel Brady. Sanders contends that the photo array was unduly suggestive because his photo was the only one of the six without horizontal lines denoting the height of the person photographed. Additionally, Sanders alleges that the photo array was overly suggestive because his setting was different and because his visage appeared considerably smaller than those of the others. Specifically, Sanders submits that the rapidity of the identification by Brady was the result of an overly suggestive photo array. We have reviewed the photo array, however, and conclude that it was not impermissibly suggestive. Brady had a sufficient opportunity to independently view the suspect during the commission of the crime, and to describe and positively identify him a few days later. If anything, the rapid identification of the witness indicates Brady's high level of certainty regarding his identification of Sanders. Accordingly, Sanders's third assignment of error is overruled.

## III. SUFFICIENCY OF EVIDENCE

In his fourth assignment of error, Sanders asserts that there was insufficient evidence to establish each element of the offenses beyond a reasonable doubt. Whether evidence is sufficient to support a conviction is a question of law.[18] An appellate court must review the evidence in the light most favorable to the state when considering whether the evidence was sufficient to support a conviction. Specifically, the question to be answered is whether any trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.[19]

Sanders first contends that there was insufficient evidence supporting his conviction on two counts of robbery. Sanders asserts that Brady's identification evidence was flawed because it was given too quickly. Sanders also contends that the identification made by the other victim, Julia Sanker, was flawed because she failed to identify him in the photo array or at the juvenile hearing. Having already dismissed Sanders's assertion that Brady's identification was flawed due to an unduly suggestive photo array in our discussion of the third assignment of error, we now address Sanders's assertion that Sanker's identification was

17. *State v. Jells* (1990), 53 Ohio St.3d 22, 27, 559 N.E.2d 464, 470.

18. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546.

19. *Id.*

flawed. Although Sanker could not make a positive identification based on the photo array or at the juvenile hearing, she did testify at trial that Sanders was in fact the person who robbed her and stole her car. It is clear that Sanker had a sufficient opportunity to view Sanders during the commission of the crime and to make a positive identification in court. After reviewing the entire record, we conclude that the trier of fact was entitled to give credit to Sanker's testimony. Accordingly, Sanders's assertion that the state offered insufficient evidence to prove the element of identity beyond a reasonable doubt is without merit.

Sanders also asserts that there was insufficient evidence to support the conviction on the two firearm specifications because there was insufficient evidence to prove that the gun was operable. The trier of fact is to consider all the relevant facts and circumstances surrounding the crime, including any threats made by the suspect holding the firearm, when determining whether the suspect was in possession of a firearm.[20] Furthermore, the Ohio Supreme Court has rejected the view that circumstantial proof of operability must be narrowed to specific evidence such as bullets or the smell of gunpowder.[21] Both Sanker and Brady testified that the suspect was holding a small black handgun during the commission of the crimes. Sanker testified that the gun was pointed at her when she was ordered out of her car. Similarly, Brady testified that the gun was pointed at him and "cocked" when the suspect took Brady's money. Thus, after a thorough review of the entire record, we hold that there was sufficient evidence to prove operability of the firearm for both firearm specifications.

In sum, we hold that there was sufficient evidence to support the two robbery convictions and the two firearm specifications. As a result, Sanders's fourth assignment of error is overruled.

The remaining assignments of error, specifically the second, fifth, sixth, seventh and eighth assignments of error, are rendered moot in view of our disposition of Sanders's first assignment of error. Accordingly, we do not address them. The judgment of the trial court is reversed and the cause is remanded for a new trial.

*Judgment reversed*
*and cause remanded.*

SUNDERMANN, P.J., GORMAN and PAINTER, JJ., concur.

───────

**20.** *State v. Thompkins, supra,* paragraph one of the syllabus.

**21.** *Id.* at 385, 678 N.E.2d at 545–546.