The STATE of Ohio, Appellee,

v.

CLIFFORD, Appellant.■

[Cite as *State v. Clifford* (1999), 135 Ohio App.3d 207.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–980291.

Decided Aug. 6, 1999.

208

*Michael K. Allen,* Hamilton County Prosecuting Attorney, and *Paula E. Adams,* Assistant Prosecuting Attorney, for appellee.

*H. Fred Hoefle,* for appellant.

---

DOAN, Presiding Judge.

On November 21, 1997, while defendant-appellant Jermico Clifford was working at the Chocolate City bar, he became involved in an altercation with an individual known as "D–Man." Clifford attempted to persuade D–Man to leave the bar at closing time. D–Man pulled a .45–caliber handgun and fired at Clifford's head. Clifford was able to grab the weapon as it discharged and deflected the bullet, but the bullet grazed his head. D–Man fled the bar. A defense witness testified that D–Man ran from the bar into the parking lot, still firing the gun. The state contended that Clifford pursued D–Man into the parking lot, firing his own .45–caliber weapon. A police officer, who had arrived on the scene in his cruiser, testified that he looked into his rearview mirror and saw a person whom he believed to be Clifford firing shots in the parking lot. Shell casings were recovered from inside and outside Chocolate City, but no weapons were found.

Two days later, on November 23, 1997, at about 4:00 a.m., Clarence Gatewood, Gaius Solomon, and Keisha Campbell were in a blue Neon automobile at the intersection of Liberty and Vine streets. A masked gunman fired three shots into the Neon. No one was hit. The victims were unable to identify the shooter, but they did give police a description. The shell casings recovered from the scene matched those found outside the Chocolate City bar.

On November 24, 1997, Ricardo Hilliard was shot to death on his front porch. The shots were fired from a small gray automobile. Hilliard's friend Larry Murph testified that prior to the shooting, he had gone with Hilliard to the laundromat. Murph testified that a man came into the laundromat and said to Hilliard, "Boy, your boy shot my brother in the head." Murph and Hilliard left the laundromat and returned to Hilliard's house. Murph stated that he had crouched down by the porch railing when he saw the gray car approaching. Murph testified that Clifford then exited the passenger side of the car and shot Hilliard. Murph identified the car from which the fatal shots were fired as belonging to Clifford's girlfriend. Two women who lived across the street from Hilliard's house testified that when they heard the shots, they looked out of the window. The women stated that Hilliard was alone on the porch when he was shot, that the shooter never left the car, and that the automobile they had seen the night of the murder was not that of Clifford's girlfriend. The laundromat attendant testified that Hilliard had arrived alone the night he was murdered. Hilliard's cousin testified that the night before Hilliard was killed, he told her that Clifford and a person known as "June Bug" had a "hit" out on him.

Murph testified that after Hilliard was killed, he beat on the window of the house. Hilliard's friend Mia Glover opened the door. Murph and Glover pulled Hilliard's body inside. Hilliard was killed with a nine-millimeter bullet. A subsequent search of an automobile, which Clifford drove, but which belonged to his mother, revealed a .45–caliber magazine. A search of the gray automobile belonging to Clifford's girlfriend revealed various types of ammunition and a box for nine-millimeter ammunition.

Clifford was charged with three counts of felonious assault for the incident at Liberty and Vine. He was charged with aggravated murder in a separate indictment for the shooting of Hilliard. The state's theory of the case was that Clifford shot at the victims at Liberty and Vine because he mistook their car for one driven by D–Man. There was some evidence that at the time of the Liberty and Vine shootings, D–Man drove a red, not a blue, automobile. The state also contended that Clifford shot Hilliard as revenge for the Chocolate City incident. There was testimony that Hilliard had been present in Chocolate City the night Clifford was shot, but there was no evidence that Hilliard had been involved in the altercation.

The state made a motion to consolidate the indictments for trial, which the trial court granted. Following a jury trial, Clifford was found guilty of all counts. The trial court overruled Clifford's motion for a new trial. Clifford has timely appealed.

■ Clifford's first assignment of error alleges that the trial court erred in granting the state's motion to consolidate the indictments for trial. Crim.R. 13 states:

"The court may order two or more indictments or informations or both to be tried together, if the offenses or the defendants could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment or information."

Crim.R. 8(A) states:

"Joinder of offenses. Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."

Crim.R. 14 provides that a trial court shall order separate trials if a defendant is prejudiced by joinder.

■ Joinder and the avoidance of multiple trials are favored to conserve judicial resources, including time and expense, reduce the chance of incongruous results in successive trials before different juries, and diminish inconvenience to the witnesses. See *State v. Thomas* (1980), 61 Ohio St.2d 223, 15 O.O.3d 234, 400 N.E.2d 401. To prevail on a claim that the trial court erred in consolidating charges for trial, the defendant must demonstrate affirmatively (1) that his rights were prejudiced, (2) that at the time that the trial court ruled on the motion to consolidate, he provided the court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in consolidating the charges for trial. See *State v. Schaim* (1992), 65 Ohio St.3d 51, 600 N.E.2d 661; *State v. Torres* (1981), 66 Ohio St.2d 340, 20 O.O.3d 313, 421 N.E.2d 1288. Absent a clear showing of abuse of discretion, a trial court's decision regarding joinder will not be disturbed. See *Torres, supra; State v. Daniels* (1993), 92 Ohio App.3d 473, 636 N.E.2d 336. A defendant has the burden of affirmatively showing that his rights were prejudiced by joinder. See *id.*

■ To determine whether a defendant is prejudiced by the joinder of multiple offenses, the trial court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct. See *Schaim, supra.*

The crimes charged against Clifford in the different indictments were simple and distinct. The factual situation of each crime was easy to understand and was capable of segregation. The crimes involved different victims, different factual situations, and different witnesses. See *State v. Decker* (1993), 88 Ohio App.3d 544, 624 N.E.2d 350.

The evidence of the crimes charged in each indictment was simple and distinct. Clifford has not demonstrated that his rights were prejudiced by the joinder. Therefore, the trial court did not abuse its discretion in consolidating the charges for trial. See *State v. Williams* (Dec. 1, 1993), Hamilton App. No. C–920869, unreported, 1993 WL 547184. The first assignment of error is overruled.

■ We will now address Clifford's seventh assignment of error, which alleges that the trial court erred in clearing the courtroom of all spectators on the defense side, including Clifford's mother and grandfather. Clifford argues that the trial court's action deprived him of his constitutional right to a public trial.

During the hearing on the state's motion to consolidate the indictments for trial, the trial court was ruling on an objection when the following took place:

"[The Prosecutor]: Judge before we go any further, a couple of times there are people in the back and I could –

"[The Court]: All right. All you folks in the back, get out of the courtroom now. Everybody out of the back there. Everybody out of the courtroom and wait outside and don't laugh or I will have you arrested.

"[Defense Counsel]: Could the grandfather and mother stay in?

"[The Court]: Everybody on that side, get out. All of you. Get out. Everybody out. Take the children with you please."

■ The right to a public trial is a fundamental constitutional guarantee under the Sixth Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, and Section 10, Article I of the Ohio Constitution. See *State v. Lane* (1979), 60 Ohio St.2d 112, 14 O.O.3d 342, 397 N.E.2d 1338. This guarantee is a "cornerstone of our democracy which should not be circumvented unless there are extreme overriding circumstances." *Id.* at 119, 14 O.O.3d at 347, 397 N.E.2d at 1343. The right of the public to attend criminal trials is implicit within the guarantees of the First Amendment. See *State v. Unger* (1986), 28 Ohio St.3d 418, 28 OBR 472, 504 N.E.2d 37. The right to a public trial is so important that a criminal defendant is not required to show

specific prejudice to obtain relief from the constitutional violation. See *Waller v. Georgia* (1984), 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31; *State v. Sanders* (1998), 130 Ohio App.3d 92, 719 N.E.2d 619. The right to a public trial applies equally to pretrial and trial proceedings. See *Unger* and *Sanders, supra.*

 However a defendant does not have an *absolute right* to a public trial. See *id.* A trial judge has the authority to exercise control over the proceeding. See *Sanders, supra.* Yet, the abridgement of a defendant's right to a public trial shall occur only when necessary. See *State v. Bayless* (1976), 48 Ohio St.2d 73, 2 O.O.3d 249, 357 N.E.2d 1035. Any closure must be narrowly drawn and sparingly applied. See *Unger, Lane,* and *Sanders, supra.*

In *State v. Sanders* we stated:

"To close a trial proceeding, the court must consider various factors. First, the trial court must determine that there is an overriding interest that is likely to be prejudiced if the courtroom is not closed. Second, the trial court must determine whether there are reasonable alternatives available that will protect that interest yet preserve a defendant's constitutional right to a public trial. Third, it must issue an order that is no broader than necessary to preserve the stated interest. Finally, the court must make findings adequate to support the closure." (Footnote omitted.) *Id.* at 97, 719 N.E.2d at 622.

In *Sanders,* on the second day of trial, the trial court admonished the audience on two separate occasions for talking and asked the audience to be quiet. On the final day of trial, the court noted that there were disturbances in the hallway and that an adverse atmosphere was developing in the courtroom. The prosecutor was concerned that she would not be able to continue without feeling intimidated and harassed by the spectators. The court entertained arguments. Defense counsel opposed the expulsion of all spectators and requested that Sanders's wife and parents be permitted to remain in the courtroom. The trial court denied the request and ordered all spectators from the courtroom.

We reversed Sanders's conviction and remanded the case for a new trial. We noted that the two earlier disturbances alone did not constitute an overriding interest to warrant total closure of the courtroom. Further, assuming there was a necessary interest to protect, the trial court had not considered an alternative to closure. No effort was made to identify any spectators responsible for the disturbances. In addition, we held that the order for total closure was broader than necessary, because Sanders's wife and parents were removed despite the fact that there was no evidence relating to their involvement in the disturbances. Absent some evidence supporting the expulsion of Sanders's family, we held that the trial court's order for total closure of the courtroom was overly broad.

Additionally, we noted that the trial court had made no findings supporting the order for closure.

In the case *sub judice,* the trial court did not indicate why it was closing the courtroom. There is a dearth of evidence in the record regarding the reasons for closure. We can only surmise that the trial court closed the courtroom because of some disruptive behavior by the spectators. The trial court did not consider an alternative to closing the courtroom. There was no attempt by the trial court to determine the identity of those responsible for any disturbance and to expel them from the courtroom. In addition, the trial court issued an order broader than necessary, because the court removed Clifford's mother and grandfather despite the fact that there was no evidence concerning their involvement in any disturbance. Further, the trial court made no findings on the record supporting closure.

We hold that the trial court's conclusory order for the spectators to leave the courtroom does not provide us with a sufficient rationale for total closure of the courtroom. See *State v. Sanders, supra.* We hold that the trial court denied Clifford his constitutional right to a public trial under both the United States and Ohio Constitutions by excluding all spectators from the courtroom. The deprivation of the constitutional right to a public trial cannot be harmless error. See *Waller v. Georgia, supra; State v. Sanders, supra.* The seventh assignment of error is sustained.

Clifford raises several other assignments of error, alleging prosecutorial misconduct, discovery violations, ineffective assistance of counsel, error in the admission and exclusion of certain evidence, error in the removal of a certain juror, and deficiencies in the weight and sufficiency of the evidence. In light of our disposition of Clifford's seventh assignment of error, assignments of error two through six and eight through thirteen are made moot. Therefore, we do not address them.

The judgment of the trial court is reversed, and the cause is remanded for a new trial and for further proceedings consistent with law and this decision.

*Judgment reversed*
*and cause remanded.*

PAINTER, J., concurs.

HILDEBRANDT, J., dissents.

PAINTER, Judge, concurring.

The courtroom door must remain open. The Ohio Constitution states, as does the Sixth Amendment to the United States Constitution, that a defendant has the right to a "public trial."[1] The framers of the Ohio Constitution did not add rights as amendments—they put them right up front in Article I. We have to believe that they meant what they said.

While the issue in this case arose not in a "trial" but in a motion hearing, "trial" includes all substantive parts of courtroom litigation.[2] Thus, the fact that the problem arose in a pretrial hearing is not material.

The requirement that trials be open is not only a criminal defendant's right—it is also the right of the public to see that justice is done. The cases concerning public access to the courts are grounded also in the First Amendment to the United States Constitution and Section 11, Article I of the Ohio Constitution, the "freedom of the press" provisions. The courtroom door may be closed to anyone only when absolutely necessary, after the trial judge makes a specific finding to that effect. Any closure order must be as narrow as possible under the circumstances. (I also believe that the same rules apply to civil proceedings, because a trial is a public event that is of interest to the entire community—the disinfectant of sunlight applies equally to criminal and civil trials.[3])

All court proceedings are presumptively open to everyone.[4] It is the trial judge's duty to enforce this policy of openness, over the objection of either side, or even despite the agreement of both sides to close a proceeding. The judge's role is to secure not only the parties' rights, but also the right of the public to open proceedings.

But the trial judge must control the courtroom. Disruptive persons, whether they be members of the public, media representatives, friends, family, or supporters of the parties, must be dealt with. The right to a trial means the right to an orderly trial. If any people, by noise or behavior, disrupt the proceedings and fail to desist after a warning, they may be removed from the courtroom. No one's rights are protected if the judge cannot even hear the testimony. Still, the

---

1. Section 10, Article I, Ohio Constitution.

2. *See Waller v. Georgia* (1984), 467 U.S. 39, 46–47, 104 S.Ct. 2210, 2215–2216, 81 L.Ed.2d 31, 38–39; *State ex rel. The Repository v. Unger* (1986), 28 Ohio St.3d 418, 28 OBR 472, 504 N.E.2d 37 (right of public trial extends to pretrial proceedings).

3. *NBC Subsidiary (KNBC–TV), Inc. v. Superior Court* (1999), 86 Cal.Rptr.2d 778, 980 P.2d 337.

4. Some hearings are restricted by statute. See, *e.g.*, R.C. 3107.17 (adoption). And *deliberations*, whether of a court or of a jury, are closed. But these are exceptions, and they do not negate the rule that court proceedings are *presumptively* open.

removal order must be directed at specific persons—those found to be causing the disruption.

The problem in this case is that we cannot tell from the record what, if anything, happened to cause a disturbance. An appellate court is limited to the record before it. While it is possible that people were talking, or even yelling, in the courtroom, there is nothing in the record concerning their behavior. After only the colloquy set out in the lead opinion, the judge ordered everyone on one side of the room removed. The dissent states that the record provides support for the removal. I am unable to discover where this alleged support lies. Constitutional rights may not be abrogated by wishful interlineation of the record.

To make an appropriate record supporting the removal of unruly persons, the trial judge could have (1) stated the objectionable behavior on the record, (2) given a short warning that disruption would not be tolerated, and then (3) if the behavior persisted, stated that fact on the record and ordered the specific culprits removed. It may be that all those removed were causing problems, but there is nothing in the record to demonstrate that any of them were. Without such a reflection on the record, the removal of spectators violated the defendant's and the public's (the ejected spectators were members of the public) rights.

The trial judge may have been justified in removing some or all of those ejected. But we simply cannot find anything in the record to support the removal. Because we are bound by the record, we must reverse.

HILDEBRANDT, Judge, dissenting.

Because I believe that the record supports the trial court's conclusion that closure of the hearing was necessary, I would affirm the convictions. The transcript of the hearing on the motion to consolidate indicates that a number of spectators created a disruption in the courtroom to the extent that the prosecutor suggested that he could not properly proceed with the hearing. In response to the prosecutor's statements, the trial court ordered the removal of the persons in the area of the courtroom where the disruption originated. Defense counsel did not object to the closure, but merely requested that Clifford's mother and grandfather be allowed to remain.

In light of these circumstances, I would hold that reversal is not mandated by the holding in *Sanders*. The record affirmatively demonstrates that certain spectators were creating a disruption in the courtroom. Contrary to the assertions of the majority, the trial court did not issue a blanket closure of the courtroom, but instead ordered only the removal of those persons from the side of the room where the disruption arose. Further, the lack of any strenuous objection on the part of defense counsel suggests that the disruption was serious

and continual, thereby justifying the trial court's decision to partially close the hearing.

The constitutional protection of a public trial is intended to ensure that the "general public" may see that "the judge and prosecutor do their job properly." *Sanders, supra.* In the case at bar, the hearing was viewed by the general public, with only those in the area of the disturbance ordered to be removed. Though the record does not affirmatively demonstrate that Clifford's mother and grandfather participated in the disruption, I would hold that their exclusion was not sufficient to constitute a violation of Clifford's right to a public trial, especially in the context of a pretrial hearing. I would therefore affirm the judgment of the trial court, and I respectfully dissent.