DECISION.
{¶ 1} Defendant-appellant, Bryant R. Gaines, appeals the judgment of the Hamilton County Court of Common Pleas convicting him of murder pursuant to R.C. 2903.02(A), with a firearm specification. He was convicted after a jury trial. For the following reasons, we affirm the trial court's judgment.
 {¶ 2} On an afternoon in September 2003, there was a party at the apartment of Janara Tucker. At some point during the party, there was an argument involving Clarence Eugene Bradshaw's companions and another group of people. The argument simmered for the rest of the afternoon and into the evening.
 {¶ 3} A short time before midnight, Bradshaw's half-brother, Brandon Mincy, went to talk with Bradshaw. Mincy spoke briefly with Bradshaw near Tucker's apartment building, and Bradshaw then walked away, stating that he wanted to talk to someone.
 {¶ 4} Bradshaw was near the steps of the building when Mincy saw Lonnel Dickey shoot Bradshaw twice at close range. Mincy then saw his cousin, Gaines, follow closely behind Dickey and shoot Bradshaw. Immediately after, Dickey fired a shot into Bradshaw's head. Mincy testified that Gaines was wearing jeans and a white T-shirt on the night of the offense.
 {¶ 5} Lionel Mincy, Brandon's brother, testified that he was a short distance up the street from the apartment building when he heard the shots. Although he did not see the shots fired, he saw Gaines and Dickey run down the street immediately after the shooting.
 {¶ 6} It was the state's theory that Gaines had used a .45-caliber firearm and that Dickey had used a .38-caliber gun. Lionel Mincy testified that Gaines had shown him a.45-caliber handgun some time before the shooting. Two .38-caliber shell casings and one .45-caliber casing were recovered from the crime scene.
 {¶ 7} The day after the shooting, police found a white T-shirt, jeans, and a pair of shoes in Gaines's room at his mother's residence. Forensic tests revealed the presence of gunshot residue on the clothing.
 {¶ 8} The deputy coroner testified that the gunshot wound to Bradshaw's head would certainly have caused his death. He further testified that the abdominal wound inflicted by the .45-caliber gun, standing alone, might or might not have resulted in death.
 {¶ 9} Gaines took the stand in his own defense and denied any involvement in the offense. He testified that he was in the hallway of Tucker's apartment building when the shots were fired. He produced the testimony of a number of other witnesses who also stated that he was in the building when the shooting occurred.
 {¶ 10} The jury found Gaines guilty, and the trial court sentenced him to an indefinite prison term of fifteen years to life, as well as a consecutive three-year term for the firearm specification.
 {¶ 11} In his first assignment of error, Gaines now argues that the trial court erred in failing to instruct the jury on the lesser-included offenses of attempted murder and felonious assault.
 {¶ 12} Specifically, he argues that because the deputy coroner stated that the wound inflicted by the .45-caliber handgun might not have been fatal, the jury could have reasonably found that he was not guilty of committing murder under R.C. 2903.02(A), which requires proof that the defendant purposely caused the death of the victim. He contends that the jury should have been permitted to consider whether he had merely attempted to cause Bradshaw's death[1] or, in the alternative, whether he had caused serious physical harm to Bradshaw without causing his death.[2]
 {¶ 13} We find no merit in the assignment. A trial court is required to give an instruction on a lesser-included offense only where the evidence would reasonably support both an acquittal on the crime charged and a conviction on the lesser offense.[3] In deciding whether to give an instruction on a lesser-included offense, the trial court must view the evidence in a light most favorable to the defendant.[4]
 {¶ 14} In the case at bar, we find no error in the trial court's refusal to give the requested instructions. Although the wound inflicted by the gun that Gaines had allegedly wielded might not have caused Bradshaw's death, the evidence indicated that Gaines and Dickey had acted in concert to deliberately cause the death. The gunmen fired shots in rapid succession and at close range into parts of the victim's body that one would expect to cause death, and death in fact resulted. No reasonable interpretation of the evidence would have supported an acquittal on the greater offense and a conviction on the lesser offenses. The first assignment of error is overruled.
 {¶ 15} Gaines argues in his second assignment of error that the trial court deprived him of his right to a public trial. Specifically, he argues that the court improperly excluded his parents and other spectators from the courtroom.
 {¶ 16} In State v. Clifford,[5] this court reiterated the procedure that a trial court must follow in excluding persons from its proceedings. To close a proceeding, the court must determine that there is an overriding interest that is likely to be prejudiced if the courtroom is not closed, and it must also determine whether there are reasonable alternatives that will protect that interest while preserving the defendant's right to a public trial.[6] The court must issue an order that is no broader than necessary to preserve the overriding interest that the court seeks to protect and must make findings adequate to support the closure.[7]
 {¶ 17} In this case, we find no infringement of Gaines's right to a public trial. With respect to Gaines's parents, the trial court made the decision to exclude them from the courtroom during a recess in the proceedings. The court then reconsidered its decision and allowed them to return to the courtroom when the proceedings resumed. Accordingly, they were not prevented from viewing the proceedings, and Gaines can claim no infringement of his rights in this respect.
 {¶ 18} As for the spectators who were excluded, the court made findings on the record that they had been disruptive and that they would not heed the court's admonitions to behave in an orderly fashion. The trial court excluded only those persons it had found to have been disruptive and thus narrowly tailored its order to preserve the overriding interest of an orderly trial. Gaines has not demonstrated that the court erred in its findings or that the order was overly broad. The second assignment of error is overruled.
 {¶ 19} In his third assignment of error, Gaines argues that the trial court erred in admitting into evidence certain out-of-court statements of Brandon Mincy. He argues that the statements were inadmissible hearsay, and that even if they were admissible under a hearsay exception, they violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution.
 {¶ 20} The first statement that Gaines challenges was Lionel Mincy's testimony at trial that Brandon Mincy had stated immediately after the killing that Gaines had been one of the assailants. As the state properly notes, this statement was admissible as an excited utterance under Evid.R. 803(2), because Brandon Mincy was still under the stress of excitement caused by the shootings when he made the statement.
 {¶ 21} We next turn to the issue of the statement's admissibility under the Confrontation Clause. In Crawford v. Washington,[8] the United States Supreme Court held that the admission of an unavailable declarant's prior "testimonial" statements violated the defendant's right to confront witnesses, unless the defendant had a prior opportunity to cross-examine the declarant.
 {¶ 22} The term "testimonial statement" has been broadly defined as being "the result of official examination," including police questioning.[9] But the Crawford court emphasized that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements."[10]
 {¶ 23} We find no constitutional violation in the admission of Brandon Mincy's utterance on the night of the offense. Brandon Mincy had made the statement spontaneously after he had just witnessed the offense and before the police had even arrived at the scene. The statement accordingly could not be deemed "testimonial" within the meaning ofCrawford. And in any event, Brandon Mincy was subject to cross-examination at trial, thus removing any possible constitutional defect.
 {¶ 24} Gaines next challenges the testimony of a police officer who had questioned Brandon Mincy some time after the offense. The officer testified that Brandon Mincy had implicated Gaines as one of the assailants. Gaines argues that this testimony was inadmissible underCrawford and under the rules of evidence.
 {¶ 25} We find no prejudicial error in the admission of the statement. As we have already noted, Brandon Mincy was subject to cross-examination at trial, and the use of his prior statement posed no constitutional problems.
 {¶ 26} And even if Brandon Mincy's prior statement did not fall within any hearsay exception, any error in its admission was harmless beyond a reasonable doubt. Brandon Mincy had identified Gaines as one of the assailants in his trial testimony, and Lionel Mincy's testimony had confirmed Brandon Mincy's identification of Gaines as one of the perpetrators. Therefore, the officer's testimony was merely cumulative to other evidence, and the third assignment of error is overruled.
 {¶ 27} In the fourth assignment of error, Gaines argues that he was denied the effective assistance of trial counsel in that counsel failed to file a motion to suppress his statement to the police. Though Gaines concedes that the prior statement was exculpatory, he argues that he was prejudiced by the inconsistencies between the prior statement and his trial testimony. He also argues that counsel was deficient in failing to call Dickey as a witness.
 {¶ 28} To establish ineffective assistance of trial counsel, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonable performance and that prejudice arose from counsel's performance.[11]
 {¶ 29} In this case, Gaines has not demonstrated ineffective assistance. First, Gaines has not shown that counsel could have foreseen the inconsistencies between the prior statement and the trial testimony, and the decision to present the jury with the exculpatory statement could have been deemed sound trial strategy. Second, Gaines has not even suggested a basis upon which trial counsel could have sought suppression of the statement.
 {¶ 30} And while Gaines claims that Dickey's testimony would have been favorable to his defense, there is nothing in the record to support that assertion. Therefore, we cannot say that Gaines was prejudiced by counsel's decision not to call Dickey as a witness. For these reasons, the fourth assignment of error is overruled.
 {¶ 31} In his fifth and final assignment of error, Gaines argues that his convictions for murder and for the firearm specification were against the manifest weight of the evidence. To reverse a conviction on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[12]
 {¶ 32} Here, the jury's guilty verdict was in accordance with the evidence. Brandon Mincy testified that he had witnessed Gaines fire a shot into Bradshaw's body at close range, and Lionel Mincy testified that he had seen Gaines flee from the scene immediately after the shots were fired. The gunshot residue on Gaines's clothing confirmed that he had recently fired a weapon. And as we noted under the first assignment of error, there was ample evidence that Gaines's actions, in concert with Dickey, had resulted in Bradshaw's death.
 {¶ 33} Although Gaines denied any involvement in the murder and produced evidence indicating that he was inside the apartment building at the time of the offense, we cannot say that the jury clearly lost its way in finding him guilty. The fifth assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
Doan, P.J., and Painter, J., concur.
[1] See R.C. 2923.02.
[2] See R.C. 2903.11.
[3] State v. Neely, 1st Dist. No. C-030755, 2005-Ohio-2342, at ¶ 44.
[4] Id.
[5] (1999), 135 Ohio App.3d 207, 733 N.E.2d 621.
[6] Id. at 213, 733 N.E.2d 621, citing State v. Sanders (1998),130 Ohio App.3d 92, 97, 719 N.E.2d 619.
[7] Id.
[8] (2004), 541 U.S. 36, 124 S.Ct. 1354.
[9] See State v. Nix, 1st Dist. No. C-030696, 2004-Ohio-5502, at ¶¶ 73-74, citing id., jurisdictional motion overruled, 105 Ohio St.3d 1496,2005-Ohio-1666, 825 N.E.2d 621.
[10] Crawford, supra, at 60, 124 S.Ct. 1354, fn. 9.
[11] Strickland v. Washington (1984), 466 U.S. 668, 686, 104 S.Ct. 2052;State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. paragraphs two and three of the syllabus.
[12] State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.