[Cite as *State v. Wright*, 2017-Ohio-8702.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
JACKSON COUNTY

STATE OF OHIO,                          :
                                        :       Case No.  16CA3
        Plaintiff-Appellee,             :
                                        :
        vs.                             :       DECISION AND JUDGMENT
                                        :       ENTRY
DENNIS WRIGHT,                          :
                                        :
        Defendant-Appellant.            :       **Released: 11/16/17**
_____

APPEARANCES:

Timothy Young, Ohio State Public Defender, and Kristopher A. Haines,
Assistant Ohio State Public Defender, Columbus, Ohio, for Appellant.

Mike DeWine, Ohio Attorney General, and Jocelyn K. Lowe, Special
Assistant Prosecutor, Columbus, Ohio, for Appellee.
_____

McFarland, J.

{¶1}  Dennis Wright appeals the Order on Sentencing entered May 23, 2016 in the Jackson County Court of Common Pleas.  Wright was convicted of multiple counts of sexual battery, unlawful sexual conduct with a minor, gross sexual imposition, and rape.  On appeal, Wright asserts: (1) his rights to due process and a fair trial were violated when the trial court allowed the State to present overly prejudicial evidence of prior bad acts through a non-victim witness; and (2) he was rendered the ineffective assistance of counsel due to trial counsel's failure to move to sever certain counts of the

indictment for purposes of trial. However, having reviewed the record herein, as well as the pertinent Ohio law, we find no merit to Wright's assignments of error. Accordingly, we overrule both assignments of error and affirm the judgment of the trial court.

## FACTS

{¶2} In February 2016, Appellant was indicted by the Jackson County Grand Jury as follows:

| | |
|---|---|
| Count One | Sexual Battery, R.C. 2907.03(A)(12); |
| Count Two | Sexual Battery, R.C. 2907.03(A)(12); |
| Count Three | Unlawful Sexual Conduct with a Minor, R.C. 2907.04(A); |
| Count Four | Unlawful Sexual conduct with a Minor; R.C. 2907.04(A); |
| Count Five | Illegal Use of a Minor in Nudity-Oriented Material, R.C. 2907.323(A)(1); |
| Count Six | Gross Sexual Imposition, R.C. 2907.05(A)(1); |
| Count Seven | Gross Sexual Imposition, R.C. 2907.05(A)(1); |
| Count Eight | Gross Sexual Imposition, R.C. 2907.05(A)(1); |
| Count Nine | Rape, R.C. 2907.02(A)(1)(c); |
| Count Ten | Rape, R.C. 2907.02(A)(2); |
| Count Eleven | Rape, R.C. 2907.02(A)(1)(c); |
| Count Twelve | Rape, R.C. 2907.02(A)(2); |

Count Thirteen      Rape, R.C. 2907.02(A)(1)(c);

Count Fourteen      Rape, R.C. 2907.02(A)(2); and,

Count Fifteen       Rape, R.C. 2907.02(A)(1)(b).

{¶3} At the time of the indictment, Appellant pastored a church in rural Jackson County. Appellant was married and had two adult sons. The complaining witnesses in the indictment were two of Appellant's congregants at the church, one a teenage female, and one a mentally challenged adult female. The third complaining witness was one of Appellant's sons, dating back to the complainant's childhood.

{¶4} The indictment also contained sexually violent predator specifications as to Counts 1, 2, 9, 10, 11, 12, 13, and 14. Appellant was appointed counsel and entered not guilty pleas. The case eventually proceeded to jury trial which took place May 9 through May 16, 2016. Prior to trial, Appellant waived his right to trial on the sexually violent predator specifications.

{¶5} The State's theory of the case was Appellant abused his familiar relationship with the victims and his authority as their pastor, and father, to perpetrate his criminal sexual activity. The defense strategy was to portray Appellant as a victim of lies and innuendo by complainants with ulterior

motives of their own. Local media sources followed the case during the pretrial and trial phases.

{¶6} At trial, the State presented testimony from M.S., a complaining witness; Marjorie Norman, an eyewitness to one of the instances of abuse; M.S.'s twin sister; Deputy Urias Hall, an investigator for the Jackson County Sheriff's Office; T.R., another complaining witness; J.W., Appellant's son and a complaining witness; Dr. Amy Luckeydoo, a pediatrician employed by the Child Protection Center in Ross County, Ohio; Ashley Muse, a forensic interviewer with the Child Protection Center; T.S., M.S.'s older sister; and, Agent Latisha Schuler of the Ohio Bureau of Criminal Identification and Investigation. The State also offered two exhibits: a DVD of Ashley Muse's forensic interview with M.S. and a recorded conversation between Agent Schuler and Appellant.

{¶7} When the State rested, defense counsel made a Crim.R. 29 motion to dismiss the charges due to insufficient evidence. The trial court overruled the motion. Appellant then presented testimony from his wife, Diana Wright. Appellant also testified on his own behalf. After the defense rested, both sides gave closing arguments, the trial court instructed the jury, and the jury retired to deliberate.

{¶8} Appellant was subsequently convicted of all counts except count five, illegal use of a minor in sexually oriented material. He was sentenced to consecutive sentences for all counts, and life imprisonment. This timely appeal followed. Where pertinent, additional facts will be set forth below.

## ASSIGNMENTS OF ERROR

"I. MR. WRIGHT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED WHEN THE TRIAL COURT ALLOWED THE STATE TO PRESENT OVERLY PREJUDICIAL EVIDENCE ABOUT PRIOR BAD ACTS THROUGH A NON-VICTIM WITNESS."

## A. STANDARD OF REVIEW

{¶9} The admission of other acts evidence lies within the broad discretion of the trial court, and a reviewing court will not disturb the trial court's decision in the absence of an abuse of that discretion. *State v. Ruble,* 4th Dist. Washington No. 16CA20, 2017-Ohio-7259, at ¶ 27; *State v. Morris,* 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14. " 'A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary.' " *State v. Keenan,* 143 Ohio St.3d 397, 2015-Ohio-2484, 38 N.E.3d 870, ¶ 7, quoting *State v. Darmond,* 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34. An abuse of discretion includes a situation in which a trial court did not engage in a "sound reasoning process"; this review is deferential and does not permit an

appellate court to simply substitute its judgment for that of the trial court. *Darmond* at ¶ 34. We are mindful, however, that "Although the abuse of discretion standard usually affords maximum [deference] to the lower court, no court retains discretion to adopt an incorrect legal rule or to apply an appropriate rule in an inappropriate manner. Such a course of conduct would result in an abuse of discretion." *2-J Supply Inc. v. Garrett & Parker, LLC,* 4th Dist. Highland No. 13CA29, 2015-Ohio-2757, ¶ 9, quoting *Safest Neighborhood Assn. v. Athens Bd. of Zoning Appeals,* 2013-Ohio-5610, 5 N.E.3d 694, ¶ 16.

## B. LEGAL ANALYSIS

{¶10} In general, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show action in conformity therewith." Evid.R. 404(B). "It may, however, be admissible * * * [to prove] motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* But evidence of other crimes and acts of wrongdoing are strictly construed against admissibility. *See also Ruble, supra,* at ¶ 25; *State v. Marshall,* 4th Dist. Lawrence No. 06CA23, 2007-Ohio-6298, ¶ 46.

{¶11} In determining the admissibility of other acts evidence, trial courts should determine: (1) whether the other acts evidence is relevant to

establishing any fact that is of consequence, i.e. the other acts make the existence of a material fact more or less probable than it would be without that evidence; (2) whether the other acts evidence is presented to prove the character of the accused in order to show the accused acted in conformity with that character, or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B); and (3) whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice under Evid.R. 403. *Ruble,* at ¶ 26; *State v. Williams,* 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20; *State v. Adams,* 9th Dist. Lorain No. 15CA010868, 2017-Ohio-1178, ¶ 10; *State v. Fowler,* 2017-Ohio-438, —— N.E.3d ——, ¶ 17, 2017 WL 495595 (10th Dist.).

{¶12} In his first assignment of error, Appellant asserts that the trial court prejudiced him when it admitted testimony of M.S.'s sister, T.S. Appellant argues this testimony essentially added another unindicted accuser to bolster the State's case with improper propensity evidence. The State filed a motion to use Evid.R. 404(B) evidence to show Appellant's motive, preparation, plan, and modus operandi.

{¶13} The State's motion indicated T.S.'s testimony would be that

between 2010 and 2011, when T.S. was 14 and 15 years old, Appellant taught T.S. to drive a truck and used this opportunity to touch her breasts. The State argued in doing so, Appellant used his role as T.S.'s pastor and trusted family friend to gain access to her and sexually assault her. The State argued that Appellant used the same relationship with the victims as their pastor and trusted family friend to gain access to M.S., whom he also taught to drive and also sexually assaulted by touching her breasts during the "lesson." M.S. was almost the exact same age as T.S. when Appellant molested her. The State concluded that in using the same relationship, the same location, the same scheme, and the same sexual contact, the evidence adduced from T.S.'s testimony was admissible and relevant in the current case pursuant to Evid.R. 404(B) to show motive, preparation, plan, and modus operandi in committing the sexual abuse against M.S.

{¶14} At a hearing to resolve pretrial motions, Appellant argued it was highly prejudicial to allow T.S.'s testimony when she was not named as a victim in any count of the indictment. However, by written decision, the trial court announced it would be allowing T.S. to testify. The trial court relied on the Supreme Court of Ohio's decision in *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, and the Eight District Court of Appeals' decision in *State v. Herrington,* 8th Dist. Cuyahoga No.

101322, 2015-Ohio-1820, finding that the factual scenario in Appellant's case was strikingly similar to the facts in *Harrington*.

{¶15} The first witness at Appellant's trial was M.S., age 17. She testified in the past, her family attended a church with Appellant, and she identified Appellant. Appellant was the pastor and the congregation was a very small group which included her family, Appellant's family, and only a few others.

{¶16} M.S. testified she sometimes went to Appellant's farm to help him clean stalls and feed the animals. At times, Appellant bought her candy, food, and clothing. When M.S. was 10-13 years old, Appellant began talking to her about sex and "how it would feel." He also touched her breasts and vagina under her clothing. When he put his hands on her, she would tell him to stop and try to shrug him away or try to get her clothes back. He told her "it would make him love again and all that but that he loves me."

{¶17} On occasion, Appellant would get on top of M.S. on the floor of his bedroom. Once he put his penis on her vagina and it hurt. He also asked her at times to touch his penis with her hand. She felt "awkward and "really didn't want to." M.S. testified she was forced to do it, "He kept

nagging and riding me until I did it." One time, he had her put her mouth on his penis. Afterwards she cried and complained she was sick.

{¶18} M.S. further testified that Appellant let her drive his truck to practice. He told her he would help her get her license "if I do stuff with him." M.S. testified she did not tell anyone what was happening because she was scared and because her father did not "believe other victims when it happened." She also testified that on occasion, after doing the farm chores, M.S. would take a shower at Appellant's house. Sometimes Appellant would come in, open the door to look at her, and take pictures of her naked body on his phone. M.S. later deleted them.

{¶19} The instances of abuse began when M.S. was 10-13 years old. They occurred numerous times until she was 15 or 16 years old.

{¶20} On the fourth day of trial, T.S., now age 20, testified a handful of people, which included her family, attended the church where Appellant pastored. T.S. testified when she was 14 or 15 years old, she was at Appellant's house, in his truck, and he asked her if she wanted to learn to drive. When they switched places in the truck and T.S. was driving, he told her "This is what young boys will do." T.S. testified:

> "He stuck his arm around… he stuck his arm around my
> shoulders and tried to stick it down my shirt and I said no then
> he stuck it around me and tried to stick it down the front and
> back of my pants and I said no and I stopped him."

{¶21} Prior to T.S.'s testimony, Appellant's counsel renewed the objection. At the close of trial, the court instructed the jury as follows:

> "Evidence was admitted of other acts which the defendant may have committed. You may not consider that evidence to determine whether the defendant committed any act alleged in the indictment. If you find from other evidence that the defendant committed the acts charged in the indictment, then you may consider the evidence of the other act as bearing upon the defendant's motive, preparation, plan, and modus operandi."

{¶22} Based upon our review of the facts herein and the pertinent case law, we find no error or abuse of discretion in the trial court's ruling which allowed the State to present evidence of other acts through T.S.'s testimony.

{¶23} In *Williams, supra,* the Supreme Court of Ohio was asked to determine whether evidence that the defendant had a prior sexual relationship with an underage boy, A.B., he coached in the 1990s was properly admitted pursuant to Evid.R. 404(B) in the State's prosecution of the defendant for sex offenses committed in 2008 against a different underage boy, J.H., that the defendant was mentoring. *Id.* The Supreme Court recognized that "[e]vidence of other crimes, wrongs, or acts of an accused tending to show the plan with which an act is done may be admissible for other purposes, such as those listed in Evid.R. 404(B)—to show proof of motive, opportunity, intent, preparation, plan, knowledge,

identity, or absence of mistake or accident." *Id.* at ¶ 19. The court set forth a three-step analysis that courts should conduct in determining the admissibility of other acts evidence. *Id.* First, the court should "consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Id.* at ¶ 20, citing Evid.R. 401. Second, the court should "consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)." *Id.* Third, the court should "consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice." *Id.*, citing Evid.R. 403.

{¶24} In *Williams,* applying the three-part test, the Court determined that the other acts evidence related to the defendant's conduct and relationship with A.B. and was properly admitted in accordance with Evid.R. 404(B) as it helped to prove motive, preparation, and plan on the part of the defendant. *Id.* at ¶ 24 –25. With respect to the first step of the court's three-part test, the court found that A.B.'s testimony was relevant "because it tended to show the motive [the defendant] had and the

preparation and plan he exhibited of targeting, mentoring, grooming, and abusing teenage boys." *Id.* at ¶ 22. Further, A.B.'s testimony "rebutted the suggestion offered by the defense during opening statements that J.H. had falsely accused [the defendant] of abuse with the hope of getting out of trouble at school and the suggestion that [the defendant] was sexually attracted to women." *Id.* As for the second part of the test, the court noted that the evidence of the defendant's relationship with A.B. was not offered to show that abusing J.H. was in conformity with the defendant's character. *Id.* at ¶ 23. "In fact, the trial court gave two limiting instructions that this evidence was not being offered to prove [the defendant's] character—one just prior to the testimony of A.B. and one prior to deliberation." *Id.* Finally, with respect to the third part of the test, the court found that the evidence was not unduly prejudicial given the limiting instructions provided to the jury. *Id.* at ¶ 24. "[T]he trial court instructed the jury that this evidence could not be considered to show that [the defendant] had acted in conformity with a character trait. This instruction lessened the prejudicial effect of A.B.'s testimony, and A.B. corroborated J.H.'s testimony about the sexual abuse, which had been denied by [the defendant]." *Id.*

{¶25} In *State v. Powih,* 12th Dist. Brown No. CA2016-11-023, 2017-Ohio-7208, the appellate court found the facts therein to be similar to

*Williams* and, after applying the three-part test, concluded that the trial court did not abuse its discretion in permitting the other acts evidence. The court found the testimony of the uninindicted complainant in *Powih* was relevant as it tended to show the appellant's motive, intent, and plan of targeting and sexually assaulting female nursing aides in their mid-twenties who were isolated in a resident's room while caring for elderly patients who lacked awareness of what was occurring around them. The challenged other acts testimony was also relevant to prove the absence of mistake and to rebut the suggestion offered by the defense during opening statements that A.H. consented to sexual contact with the appellant before falsely accusing the appellant of assaulting her because she did not want to accept responsibility for her actions. *Id.* at ¶ 27.

{¶26} In this case, the trial court's decision allowing T.S.'s testimony also cited *State v. Herrington.* There Herrington was indicted and charged with multiple counts of gross sexual imposition, one count of kidnapping, and one count of illegal use of a minor in nudity-oriented material or performance. Prior to Herrington's trial, the court addressed appellant's pretrial motions to exclude other acts evidence pursuant to Evid.R. 404(B).

{¶27} The evidence involved Herrington's prior acts against a 19-year-old victim, A.H., in 1995. Before the jury was selected, the trial court

stated that it would permit A.H. to testify but that evidence of the appellant's prior conviction would not be admitted. The matter proceeded to jury trial in March, 2014.

{¶28} A.H., then 37 years old, testified she knew Herrington from the time of her birth. A.H.'s father and Herrington were "best friends" and both served as associate ministers at their church. A.H. testified that in 1995, Herrington approached her at her parents' home and offered to give her driving lessons. A.H. accepted his offer because she wanted to get her driver's license and was excited for the opportunity to learn how to drive. Over the course of approximately one month, Herrington took A.H. for driving lessons on three separate occasions. After the last driving lesson, Herrington suddenly kissed A.H., placed her on a couch, got on top of her and forced her to have sexual intercourse. She stated, "I tried to push him off, but I couldn't get him off of me."

{¶29} T.B., Herrington's current victim, was 20 years old at the time of trial. She testified that she first met Herrington when he began a romantic relationship with her grandmother when T.B. was approximately 7 or 8 years old. On separate occasions, T.B. lived with Herrington and her grandmother. T.B. testified about several incidents when she was inappropriately touched by Herrington in her grandmother's home.

However, several incidents occurred after Herrington offered to provide T.B. driving lessons when she was 15 years old. After the first driving lesson, T.B. went up to her bedroom. Herrington followed her to her bedroom and said he needed to "check [her] pulse" because "she seemed nervous and tense." Herrington claimed that he had to check T.B.'s pulse on her chest and had her take her shirt off. Appellant then "cupped" her breast over her bra.

{¶30} Approximately two or three weeks later, Herrington offered to give T.B. a second driving lesson. While in the vehicle, Herrington warned T.B. not to tell anyone about the driving lessons. When they returned home, T.B. went upstairs to her bedroom and Herrington followed her. Again, Herrington asked if he could check her pulse. On this occasion, Herrington had T.B. take off her pants so he could check her pulse by touching her inner leg. T.B. testified that she complied and Herrington placed two fingers on her inner thigh and "brushed" his hand over her "private parts."

{¶31} One month later, Herrington told T.B. that he was going to drive to Akron and that he would let her drive on the freeway if she wanted to join him. T.B. agreed to go along. When they returned home, Herrington followed T.B. upstairs to her bedroom and began to give her a massage because he thought she "looked tense." Herrington then asked her to take

her shirt off. T.B. testified that she complied because they were alone and she did not know what would happen if she told him no. T.B. stated that Herrington continued to give her a massage while she was lying face down on the bed. Herrington then unclasped her bra and took off her pants. T.B. testified that Herrington "moved" her underwear to the side and "separated [her] privates" with his fingers. T.B. closed her legs and Herrington went downstairs shortly thereafter.

{¶32} The *Herrington* court was guided by the Supreme Court's analysis in *Williams.* The *Herrington* court applied the three-step analysis, reasoning as follows at ¶ 33:

> "With regard to the first and second steps of the *Williams* test, we find A.H.'s testimony was relevant and was presented for a legitimate purpose under Evid.R. 404(B). Similar to the factual scenario in *Williams*, appellant's relationship and interaction with A.H. and T.B. were similar in character and method. Collectively, A.H.'s testimony demonstrated appellant's motives and the preparation and plan he exhibited, i.e., offering teenage girls driving lessons and manipulating their confidence and trust for his own sexual gratification. In our view, if believed by the jury, such testimony could corroborate portions of T.B.'s testimony. *See Williams* at ¶ 22."

{¶33} The *Herrington* court, as did the court in *Williams,* also elaborated on the fact the trial court gave limiting instructions that the evidence was not being offered to prove appellant's character. Citing the same authorities as *Williams*, the *Herrington* court further recognized the

presumption that the jury followed those instructions.  Finally, the

*Herrington* court considered whether the probative value of the other acts

evidence of the prior relationship with A.H. was substantially outweighed by

the danger of unfair prejudice.  The *Herrington* court held:

> "In our view, the challenged evidence is not unduly prejudicial
> because the trial court instructed the jury that this evidence
> could not be considered to show that appellant had acted in
> conformity with a character trait. This instruction lessened the
> prejudicial effect of A.H.'s testimony, and A.H. corroborated
> T.B.'s testimony about appellant's pattern of conduct, which had
> been denied by appellant. Thus, Evid.R. 404(B) permitted
> admission of evidence of appellant's prior crime because it
> helped to prove appellant's motive, preparation, and plan.
> Accordingly, the prejudicial effect did not substantially
> outweigh the probative value of that evidence."

{¶34}  We begin the three-step analysis by considering whether the

other acts evidence through T.S.'s testimony is relevant to establishing any

fact that is of consequence.  M.S.'s testimony regarding the sexual abuse

which she endured is set forth above fully.  She testified the abuse began

when she was 10-13 years old and ended when she was 15-16 years old.

Appellant was M.S.'s pastor and family friend.  She testified Appellant

bought her candy, food, and clothes.  He also let her drive his truck and

promised to help her get her driver's license if she engaged in sexual

activities with him or allowed him to touch her.

{¶35} Having reviewed M.S.'s testimony, we find T.S.'s testimony was relevant to establishing a fact of consequence. In both cases, the abuse occurred when the teenage girls were the age to be interested in driving, and the sexual abuse occurred during driving lessons or was endured for the sake of driving lessons. T.S.'s testimony, if believed, tended to corroborate M.S.'s testimony that at least part of the abuse she experienced occurred at approximately the same age and under the same pretextual assistance with driving lessons.

{¶36} We also consider whether the other acts evidence is presented for a legitimate purpose. Here, we find T.S.'s testimony was relevant to establish Appellant's motive, preparation, and plan. In both instances, Appellant took advantage of his relationship with the girls' families and as the girls' pastor, in order to gain their trust. The reasonable inference is that his motive was sexual gratification. It is also reasonable to infer that he planned and prepared to sexually abuse them by either getting them in a vulnerable position in his truck with him for driving lessons, or using the driving lessons as a "carrot" to get M.S. to agree to submit to unwanted sexual conduct. As in *Herrington,* Appellant's relationship and interaction

with teenage girls was similar in character and method.  T.S.'s testimony

demonstrated Appellant's motives, preparation, and the plan exhibited.[1]

{¶37}  Finally, we consider whether the probative value of the other

acts evidence is substantially outweighed by the danger of unfair prejudice.

Here, the trial court's ruling announced that it would give a limiting

instruction.  The trial court then gave its limiting instruction during the

closing portion of trial, but not prior to T.S.'s testimony.  And, the transcript

is devoid of any request for a limiting instruction by Appellant.

{¶38}  In *Powih, supra,* the trial court gave two limiting instructions

regarding other acts testimony.  Just prior to allowing the challenged

testimony, the court advised the jury as follows:

> "Ladies and gentlemen, you're about to hear evidence
> concerning a separate alleged incident, in May 2016, involving
> Mr. Powih. This evidence is only being offered and may only
> be considered by you in determining whether Mr. Powih had a
> common scheme, a plan, or a system in engaging in the conduct
> alleged in determining Mr. Powih's preparation, motive, intent,
> or absence of mistake or accident, in engaging in the alleged
> misconduct, with the alleged victim, in this present case.
> You may not—again, you may not consider this evidence as
> proof of Mr. Powih's character, in order to show that he acted in
> conformity with that character."

---

[1] *See also State v. Shank,* 9th Dist. Mahoning No. 12CA0104-M, 2013-Ohio-5368, ¶19 (As in *Williams,* [witnesses'] testimony was relevant because it tended to show Shank's motive and plan of targeting for sexual activity teenage girls who spent the night at his house after drinking alcohol. As the trial court noted, [the witnesses' testimony was "highly probative of whether [Shank] acted in conformity with a plan or a purpose or an intent to commit these sexual offenses against [the complaining witness.].")

{¶39} Then, prior to the jury's deliberation, the court provided a second limiting instruction to the jury regarding the other acts evidence. The *Powih* court noted the presumption that the jury followed the court's instructions and did not consider the other acts testimony to show that Powih was acting in conformity with bad character. [2]

{¶40} In *State v. Landers,* 2nd Dist. Greene No. 2015-CA-74, 2017-Ohio-1194, Landers argued that the trial court erred by failing to give a contemporaneous instruction when the unindicted witness testified about the "other acts" evidence. However, the *Landers* court noted that the "other acts" testimony presented was not extensive, and a limiting instruction was given. *Id.* at 65. The *Landers* court also recognized an earlier decision in *State v. Shaw,* 2nd Dist. Montgomery No. 21880, 2008–Ohio–1317, wherein the court stated: "[t]he limiting instruction should be given at the time the 'other acts' evidence is received, *[State v.] Lewis, supra,* [66 Ohio App.3d 37, 583 N.E.2d 404 (2nd Dist.1990) ] * * *. *Shaw* at ¶ 13; *Landers* at 66. *Landers* further noted that in *Shaw*, it did not say that the limiting instruction "must" be given at the time of the testimony. "We used the terms "should" and "either"—meaning that the instruction could be given at the time of the

---

[2] *See Williams,* 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, at ¶ 23; *State v. Stevens,* 12th Dist., 2017-Ohio-498, —— N.E.3d ——, ¶ 32; *State v. Ward,* 12th Dist. Clermont No. CA2013-07-059, 2014-Ohio-990, ¶ 36.

testimony or at the end of the trial." *Landers* at 67.  The *Landers* court

concluded the trial court did not err in failing to give the instruction at the

time the witness testified, emphasizing that the trial court did give a limiting

instruction and the presumption that the jury followed its instructions.

{¶41}  Similarly, in *State v. Rodrigues,* 10th Dist. Franklin No.

95APA06-683, 1996 WL 146063 (Mar. 26, 1996), Rodrigues faulted the

trial court for not instructing the jury that other acts evidence was to be

considered for a limited purpose only and not as substantive evidence of his

guilt.  The *Rodrigues* court duly noted Rodrigues did not request such an

instruction and thus waived all but plain error.  The *Rodrigues* court opined

trial court's failure to sua sponte issue a limiting instruction to the jury with

respect to the other acts evidence  would not have clearly changed the

outcome of the proceedings.  Moreover, *Rodrigues* recognized the Supreme

Court of Ohio's decision in *State v. Schaim,* 65 Ohio St.3d 51, 1992-Ohio-

31, 600 N.E.2d 661, in rejecting a defendant's claim that it was plain error

for a trial court to fail to give a limiting instruction on the use of other acts

evidence, which stated:

> "[T]he decision not to request a limiting instruction is
> sometimes a tactical one, and we do not wish to impose a duty
> on the trial courts to read this instruction when it is not
> requested." *Schaim, supra*, at 61-62, fn. 9.

{¶42}  Here, we find the probative value of T.S.'s other acts testimony is not substantially outweighed by the danger of unfair prejudice. Appellant's counsel did not request a limiting instruction prior to T.S.'s testimony, which may or may not have been a tactical decision.  However, the trial court gave a limiting instruction along with the closing jury instructions.  As in *Williams* and the numerous other cases cited, we presume the jury followed the court's instruction.

{¶43}  Having engaged in the three-step analysis, we find the trial court did not abuse its discretion in allowing T.S.'s testimony regarding other acts of the Appellant.  As such, we find no merit to the first assignment of error and accordingly, it is hereby overruled.

> "II. MR. WRIGHT'S TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO MOVE TO SEVER CERTAIN COUNTS IN HIS INDICTMENT, UNDER CRIM.R. 8 AND CRIM.R. 14, IN VIOLATION OF MR. WRIGHT'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION."

## A.  STANDARD OF REVIEW

{¶44}  Criminal defendants have a right to counsel, including a right to the effective assistance from counsel. *State v. Dukes,* 4th Dist. Scioto No. 16CA3760, 2017-Ohio-7204, ¶ 67; *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441 (1970), fn. 14; *State v. Stout,* 4th Dist. Gallia No. 07CA5,

2008-Ohio-1366, ¶ 21.  To establish constitutionally ineffective assistance of counsel, a criminal defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052 (1984); *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Goff,* 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998). "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation.  To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Conway,* 109 Ohio St.3d 412, 2006–Ohio–2815, 848 N.E.2d 810, ¶ 95.  "Failure to establish either element is fatal to the claim." *State v. Jones,* 4th Dist. Scioto No. 06CA3116, 2008–Ohio–968, ¶ 14.

{¶45}   "When considering whether trial counsel's representation amounts to deficient performance, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Dukes, supra*, at 68, quoting *State v. Walters,* 4th Dist. Washington Nos. 13CA33 & 13CA36, 2014–Ohio–4966, ¶ 23; quoting *Strickland* at 689.  "Thus, 'the defendant must overcome the presumption

that, under the circumstances, the challenged action might be considered sound trial strategy.' " *Id.* "A properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor,* 4th Dist. Washington No. 07CA11, 2008–Ohio–482, ¶ 10; citing *State v. Smith,* 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). "Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment." *Walters* at ¶ 23; citing *State v. Gondor,* 112 Ohio St.3d 377, 2006–Ohio–6679, 860 N.E.2d 77, ¶ 62, and *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988).

{¶46} "To establish prejudice, a defendant must demonstrate that a reasonable probability exists that but for counsel's errors, the result of the trial would have been different." *Dukes* at 69, quoting *Walters* at ¶ 24; quoting *State v. White*, 82 Ohio St.3d 16, 23, 693 N.E.2d 772 (1998) and *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), at paragraph three of the syllabus. "Furthermore, courts may not simply assume the existence of prejudice, but must require that prejudice be affirmatively demonstrated." *Walters* at ¶ 24. "There are countless ways to provide effective assistance in any given case; therefore, judicial scrutiny of counsel's performance must be highly deferential." *Id.* (Citations omitted).

## B. LEGAL ANALYSIS

**{¶47}** At a pretrial hearing, defense counsel indicated a motion to sever would "probably" be filed. However, this filing did not occur. Appellant argues the indictment against him was based on allegations that he sexually assaulted three different individuals over the course of nearly 26 years. He argues while there are some similarities between the accounts as told by the alleged victims, there were also significant differences. Appellant points out the allegation by Appellant's son, supposedly occurring in 1989 and 1990, differed from the conduct alleged by the teenage female victims in 2012-2015 and 2009-2010. Appellant argues the cumulative nature of the allegations caused him prejudice, and furthermore, if counsel had requested severance, it is likely that it would have been granted and the outcome of his trials would have been different. Appellant concludes the failure of his counsel to move to sever the counts pertaining to each of the alleged victims resulted in his being deprived of due process and a fair trial.

**{¶48}** Crim.R. 8(A) permits an indictment to charge two or more offenses "in a separate count for each offense if the offenses charged * * * are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a

course of criminal conduct." The law favors joining same or similar

offenses in order to "conserve [ ] judicial and prosecutorial time, lessen[ ]

the not inconsiderable expenses of multiple trials, diminish[ ] inconvenience

to witnesses, and minimize[ ] the possibility of incongruous results in

successive trials before different juries." *State v. Freeland,* 4th Dist. Ross

No. 12CA3352, 2015-Ohio-3410, ¶ 11, quoting *State v. Thomas*, 61 Ohio

St.2d 223, 225, 400 N.E.2d 401 (1991); *State v. Lott,* 51 Ohio St.3d 160,

163, 555 N.E.2d 293 (1990); *accord State v. Fry,* 125 Ohio St.3d 163, 2010–

Ohio–1017, 926 N.E.2d 1239, ¶ 196.

{¶49} Although the law favors joining same or similar offenses for

trial, a defendant may nevertheless request a trial court to sever the offenses.

*Freeland, supra,* at ¶ 12; *Fry* at ¶ 197, 926 N.E.2d 1239; *State v. LaMar,* 95

Ohio St.3d 181, 2002–Ohio–2128, 767 N.E.2d 166, ¶ 49. Crim.R. 14 states:

"If it appears that a defendant * * * is prejudiced by a joinder of offenses

* * * the court shall order * * * separate trial of counts * * * or provide such

other relief as justice requires." A defendant who claims that a trial court

erred by refusing a Crim.R. 14 request for separate trials of multiple offenses

must (1) affirmatively demonstrate that his rights were prejudiced and (2)

establish "that the court abused its discretion in refusing to separate the

charges for trial." *State v. Torres,* 66 Ohio St.2d 340, 421 N.E.2d 1288

(1981), syllabus; *accord Fry* at ¶ 197, 926 N.E.2d 1239; *State v. Hand,* 107 Ohio St.3d 378, 2006–Ohio–18, 840 N.E.2d 151, ¶ 166; *State v. Skatzes,* 104 Ohio St.3d 195, 2004–Ohio–6391, 819 N.E.2d 215, ¶ 33.  Thus, a reviewing court will not reverse a trial court's decision regarding a motion to sever unless the defendant shows that the trial court abused its discretion.  We have set forth the standard of review applicable to an abuse of discretion argument above.

{¶50}  In response to Appellant's argument, the State argues that Appellant was not prejudiced by the decision not to file a motion to sever. The State contends the evidence of each offense was simple, distinct, and unlikely to confuse a jury.  The State contends the evidence of other acts would be admissible even if the counts had been severed.  The State further argues the evidence of each offense was sufficient to sustain each verdict. As such, the State concludes Appellant's trial counsel's performance was neither deficient nor prejudicial.  We agree with the State's arguments.

{¶51}  The State may negate claims of prejudicial joinder in two ways. *Freeland, supra*, at 13; *Fry* at ¶ 198, 926 N.E.2d 1239.  Under the first method, known as the "other acts" test, joinder is not prejudicial if the joined offenses would be admissible in separate trials as "other acts" under Evid.R. 404(B). *Id.; Lott,* 51 Ohio St.3d at 163, 555 N.E.2d 293.  Under the second

method, known as the "joinder" test, the State is not required to meet the

stricter "other acts" admissibility test, but is merely required to show that

evidence of each crime joined at trial is simple and direct. *State v. Roberts*,

62 Ohio St.2d 170, 175, 405 N.E.2d 247 (1980); *State v. Torres,* 66 Ohio

St.2d at 344, 421 N.E.2d 1288. "The purpose of the 'joinder test' is to

prevent the finder of fact from confusing the offenses," *State v. Varney,* 4th

Dist. Hocking No. 07CA18, 2008–Ohio–5283, ¶ 19, and "to prevent juries

from combining the evidence to convict" the defendant of multiple crimes,

"instead of carefully considering the proof offered for each separate

offense." *State v. Mills,* 62 Ohio St.3d 357, 362, 582 N.E.2d 972 (1992).

"The two tests are disjunctive, so that the satisfaction of one negates a

defendant's claim of prejudice without consideration of the other." *State v.*

*Sullivan,* 10th Dist. Franklin No. 10AP–997, 2011–Ohio–6384, ¶ 23; *accord*

*Mills,* 62 Ohio St.3d at 362, 582 N.E.2d 972 (stating that "if the state can

meet the joinder test, it need not meet the stricter 'other acts' test"). "Thus,

when simple and direct evidence exists, an accused is not prejudiced by

joinder regardless of the nonadmissibility of evidence of these crimes as

'other acts' under Evid.R. 404(B)." *Lott,* 51 Ohio St.3d at 163–64, 555

N.E.2d 293; *State v. Franklin*, 62 Ohio St.3d 118, 122, 580 N.E.2d 1 (1991)

(stating that "an accused is not prejudiced by joinder when simple and direct

evidence exists, regardless of the admissibility of evidence of other crimes

under Evid.R. 404(B)").

{¶52} Evidence is "simple and direct" if the jury is capable of readily

separating the proof required for each offense, if the evidence is unlikely to

confuse jurors, if the evidence is straightforward, and if there is little danger

that the jury would "improperly consider testimony on one offense as

corroborative of the other." *Freeland, supra,* at ¶ 14, quoting *Skatzes* at ¶ 34,

citing *State v. LaMar,* 95 Ohio St.3d 181, 2002–Ohio–2128, 767 N.E.2d

166, ¶¶ 50–51; *State v. Brinkley,* 105 Ohio St.3d 231, 2005–Ohio–1507, 824

N.E.2d 959, ¶ 37; *Varney* at ¶ 19.  Thus, a defendant does not suffer

prejudice from joinder of offenses when the offenses charged in an

indictment are "simple and distinct," when "[t]he factual situation of each

crime was easy to understand and was capable of segregation, and when

"[t]he crimes involved different victims, different factual situations and

different witnesses." *State v. Clifford,* 135 Ohio App.3d 207, 212, 733

N.E.2d 621 (1st Dist.1999).

{¶53} In *Freeland,* we considered the issue of joinder Freeland raised

on appeal.  In 2012, the Ross County Grand Jury returned an indictment

charging Freeland with six counts of gross sexual imposition, three counts of

felonious sexual penetration, and five counts of rape.  The allegations arose

from reports law enforcement officers received between 2007 and 2009, that during the mid-1990s, Freeland sexually abused his step-children, and another young child whom he had tutored. Freeland filed a motion to sever the offenses, which the trial court subsequently overruled. Freeland was convicted of many of the offenses.

{¶54} In our decision affirming Freeland's convictions, we considered the joinder issue and found that the State satisfied the elements of the joinder test. *Id.* at 15. We observed that "the State presented simple and direct testimony from three different individuals who described distinct and separate acts that Appellant allegedly committed against them." *Id.* J.F., a twenty-two year old female, described sexual acts that occurred when she was a young child living with Freeland, who was her step-father. J.B., J.F.'s twenty-four year old brother, testified that when J.B. was around seven or eight years old, Freeland rubbed or touched his penis on two occasions. D.T., a twenty-nine year old male who was unrelated to the other two witnesses, described several incidents of fellatio and anal sex occurring when he was ten and eleven years old.

> "Each witness thus provided a different account of the acts appellant allegedly committed against them and there was no overlap in the testimony.[3] * * * Although the acts may have

---

[3] *See State v. Clyde,* 6th Dist. Erie No. E–14–006, 2015–Ohio–1859, ¶ 38, quoting *State v. Lewis,* 6th Dist. Lucas Nos. L–09–1224, L–09–1225, 2010–Ohio–4202, ¶ 33 (concluding that evidence simple and direct when "each victim testified as to his or her own experiences with [the defendant]" and stating joinder is not

occurred around the same approximate time, the state presented each witness's testimony separately so that there was no danger of confusing the evidence. Furthermore, the state presented more than sufficient evidence with respect to each victim so that there is no danger that the jury convicted appellant based upon a cumulation of evidence.[4]

{¶55} As *in Freeland,* we have reviewed the trial transcript and find that the State satisfied the elements of the joinder test. The State presented simple and direct testimony from the three victims, M.S., a teenage girl, T.R., a mentally challenged adult female, and J.W., his own son. With regard to the female victims, Appellant abused his friendship with the family and his authority as a pastor in their church to sexually assault the females. As to the male victim, Appellant abused his position of authority as a parent.

{¶56} The details of the sexual abuse M.S. suffered have been previously discussed. Further, on cross-examination, M.S. testified she went to Appellant's house nearly every day during the summers. On Sundays, after church, she would go home with Appellant and work in the barn until going back to church Sunday evening. Sometimes she stayed overnight, sleeping in a recliner or on the floor in Appellant's room. Appellant's wife and son were present at times. Appellant's wife was often away at work.

---

prejudicial when " 'the evidence is presented in an orderly fashion as to the separate offenses or victims without significant overlap or conflation of proof' ").

[4] *See State v. Hand,* 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, at ¶ 170, quoting *Torres, supra,* 66 Ohio St.2d at 344, 421 N.E.2d 1288 (1981), and *State v. Jamison,* 49 Ohio St.3d 182, 187, 552 N.E.2d 180 (1991).

M.S. acknowledged that she never feigned illness to get out of going to Appellant's house. She testified she never told her twin sister about the abuse.

{¶57} In sum, Appellant's acts of sexual abuse committed on M.S. involved his taking advantage of a young teenage girl by virtue of his position of authority and were aided by his bestowing gifts of food and clothing and driving privileges. Although M.S. was forced to endure wrongful sexual conduct, Appellant told her he loved her and held out the gifts and driving lessons as quid pro quo for the unwanted sexual advances. M.S. testified on one occasion when she cried and said she was sick, he left her alone.

{¶58} By contrast, Appellant's criminal sexual activity with T.R. was cruel, forceful, and at times violent. He called her names. Sometimes, if she refused to engage in sexual conduct, Appellant would slap her back, hit her face, and "do it anyways."

{¶59} At trial, T.R., age 35, testified she has lived with her mother almost her entire life. She was in special classes in school, but dropped out in 10th grade due to bullying. She has never been employed and is unable to drive a car. She testified she has seizures, PTSD, and a learning disability.

T.R. also identified Appellant and testified she attended the church he pastored. Appellant was also her neighbor.

{¶60} T.R. testified she went to Appellant's house for cookouts. She enjoyed petting his horses and cows and sitting outside under a tree. In 2009, she lived at Appellant's house for approximately one year. Appellant promised he would help her obtain a GED and get a car. She slept on a couch in the living room. She cleaned, vacuumed, and did outside work.

{¶61} T.R. was alone with Appellant when his wife and sons went to work. She testified she had sexual relations with him. He touched her breasts and vagina. At this point, T.R. became emotional and the court took a break. When her testimony resumed, she explained she quit doing outside work because Appellant told her she did it wrong. Appellant called her "the b-word," "idiot," and "stupid."

{¶62} Appellant touched her with his hands and he placed his penis inside her vagina and her anus. Her mouth touched his penis. T.R. emphasized she "never" wanted to do these things.

{¶63} T.R. testified one time, in the living room, she was laying on her side because Appellant shoved her head onto his penis. Appellant's son J.W. overheard them arguing, came out and said "Dad you did it again." T.R. testified J.W. punched Appellant's face. Then J.W. smacked and

pushed her.  Appellant's wife found out.  T.R. lived there another week until someone in church found her an apartment.

{¶64}  On cross-examination, T.R. acknowledged she lived at Appellant's house because she wanted to get away from her mother and experience life.  She testified she never told anybody about Appellant's abuse because she was "scared to death."  She admitted that when Appellant hit her, she did not have bruising.

{¶65}  T.R. testified that when Appellant's wife overheard the commotion, she screamed "Oh, oh this done ruined everything.  He ruined my life."  T.R. denied leaving her mother's house to get away from abuse by her mother.  She testified Appellant took her pills and she had seizure activity.  When she has seizures, she sits and stares.

{¶66}  On redirect, T.R. explained that she cannot remember what happens during a seizure, but it does not make her forget other things.

{¶67}  The sexual abuse M.S. and T.R. described was different from that suffered by the third victim, Appellant's son J.W.  J.W., age 37, testified he grew up in a very strict household.  His father would punish him by beating him with a horse whip, ball bats, a water hose, a chunk of wood, or "whatever" was nearby.  When J.W. was 9 or 10, his father would touch J.W.'s penis in the shower or the bedroom.  Usually, after a spanking, his

father would throw him back into bed and caress him in an inappropriate way. Appellant would touch his anus and insert his fingers. J.W. never told anyone and over the years, Appellant eventually quit abusing him.

{¶68} J.W. testified Agent Schuler sought him out and questioned him. J.W. testified he and his wife were staying at Appellant's house during 2009-2010. One night, he heard a noise and went into the living room and saw T.R. "giving my dad a blow job." Appellant ran into the bedroom. J.W. confronted him and hit him in the mouth. J.W. was also upset with T.R. However, J.W. did not report the incident. J.W. does not have a relationship with T.R. J.W. admitted he had a misdemeanor conviction for falsification.

{¶69} On cross-examination, J.W. described T.R. as follows: "I didn't think she was all there. I thought something might have been wrong with her * * * mentally." However, he also testified she could cook, help mow, and he thought she knew right from wrong. J.W. also admitted when he was 13 or 14, he was removed from the home because his parents could not control him.

{¶70} We find the evidence presented by the State's three complaining witnesses to be simple and direct. While there are some similarities, such as the fact M.S. and T.R. knew Appellant through church, and that M.S. and T.R. both performed farm chores for Appellant, each

witness testified to his or her own experiences. The three witnesses'
testimony regarding their own unwanted sexual encounters was detailed and
straightforward. We also note, as a matter of the presentation of evidence,
there were other witnesses that testified between M.S. and T.R., and then
between T.R. and J.W. The only overlap in testimony occurred when J.W.
testified he walked in on the sexual activity between Appellant and T.R.,
however we do not find that overlap to be significant.

{¶71} In *Freeland,* we also observed that courts have held that any
prejudice that results from the joinder of offenses is minimized when a trial
court cautions a jury before deliberations to consider each count, and the
evidence applicable to each count separately, and to state its findings as to
each count uninfluenced by its verdict on any other counts. *Freeland, supra,*
at 16; *State v. Gibson,* 6th Dist. Lucas No. L–13–1223 and L–13–1222,
2015–Ohio–1679, ¶ 30; *State v. Meeks,* 5th Dist. Stark No. 2014CA17,
2015-Ohio-1527, at ¶ 99; *State* v. *Hillman,* 2014-Ohio-5760, 26 N.E.2d
1236 (10th Dist.), at ¶ 40. Here, at Appellant's trial during closing, the trial
court instructed:

> "The charges set forth in each count in the indictment
> constitutes a separate and distinct matter. You must consider
> each count and the evidence applicable to each count separately
> and you must state your finding as to each count uninfluenced
> by your verdict as to any other count. The defendant may be

found guilty * * * the defendant may be found guilty or not guilty of any one or all the offenses charged."

**{¶72}** As in *Freeland,* based on our review of the record, we find the evidence and testimony presented was simple and direct. And, we see nothing to indicate that the jury failed to follow the trial court's instructions. *See State v. Gibson,* 6th Dist. Lucas Nos. L-13-1223 and L-13-1222, 2015-Ohio-1679, at ¶ 30 ("Absent evidence to the contrary, we indulge the presumption that the jury followed the instructions of the trial court."). In fact, we observe that the jury declined to return a guilty verdict on Appellant's charge of illegal use of a minor in nudity-oriented material. This gives us some indication that the jury considered each charge carefully and separately.

**{¶73}** Freeland further asserted that the State failed to satisfy the "other acts" test, and, thus, joinder of the offenses prejudiced him. We determined, however, that the State negated Freeland's claimed prejudice by showing that the evidence regarding each offense is simple and direct. *Id.* at 17. The Supreme Court of Ohio held that "when simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as 'other acts' under Evid.R. 404(B)." *Lott, supra,* 51 Ohio St.3d at 163, 555 N.E.2d 293. Thus, joinder of the offense was not prejudicial. Here, as in *Freeland,* even if we had

found the evidence of Appellant's other offenses to have been inadmissible other acts, having found the evidence of offenses to be simple and direct, joinder of offenses for purposes of trial was not prejudicial to Appellant.

{¶74} Therefore, having found that joinder of the offenses was not prejudicial to Appellant, we further find that he was not rendered the ineffective assistance of counsel by his attorneys' failure to file a motion to sever. Freeland also raised this argument on appeal. Freeland's trial counsel had filed a motion to sever the offenses, but did not file it in accordance with the correct time limits. However, the trial court considered the merits of Freeland's motion to sever and only cited trial counsel's failure to timely file the motion as an additional reason for denying the motion.

{¶75} In *Freeland,* having determined that the trial court ultimately ruled on the merits of his motion to sever, we failed to see how Freeland suffered prejudice as a result of trial counsel's failure to timely file the motion. We cited *State v. Carr,* 9th Dist. Summit No. 26661, 2014–Ohio–806, ¶ 25, wherein the appellate court rejected an ineffective assistance of counsel claim due to trial counsel's failure to renew motion to sever at the close of the evidence when the record revealed no evidence that joinder of offenses prejudiced Carr.

{¶76} Here, we have considered the merits of the severability argument and found that Appellant was not prejudiced by the offenses being joined at trial. Had Appellant's counsel filed the motion to sever, the trial court reasonably could have reached the same conclusion and denied severance. Therefore, we likewise fail to see how Appellant was rendered the ineffective assistance of counsel by counsel's failure to file a motion to sever which could reasonably have been denied.

{¶77} For the foregoing reasons, we find Appellant was not rendered ineffective assistance of counsel by his attorneys' failure to file a motion to sever. As such, we find no merit to the second assignment of error. Accordingly, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

Harsha, J., dissenting in part and concurring in part:

{¶78} I conclude the trial court abused its discretion in finding the probative value of T.S.'s other acts evidence was not substantially outweighed by its prejudicial effect in the context of this trial. The state already had joined 15 counts of sexual abuse that the jury was going to hear. To add additional evidence of similar conduct to that evidence went way too far in my opinion.

{¶79} In all other regards I concur in judgment and opinion.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.:     Concurs in Judgment and Opinion.
Harsha, J.:   Dissents in Part and Concurs in Part with Opinion.

For the Court,

BY:     _____
        Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**